# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 8627 | **DATE** | 1/20/2004 |
| **CASE TITLE** | Schlosser vs. St. Paul Fire and Marine Ins. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court denies plaintiff's motion for summary judgment (9-1). The status hearing set to 1/21/04 is vacated and reset to 1/29/04 at 9:30 a.m. Plaintiff's motion to enjoin St. Paul from interfering with the res before the Court (8-1) and its motion for interim restraining order (7-1) are entered and continued to that date.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 26 2004 | |
| ✓ | Docketing to mail notices. | | date docketed | 21 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| OR | courtroom deputy's initials | '04 JAN 25 PM 11:08 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DOCKETED
JAN 2 6 2004

| | |
|---|---|
| BERNARD A. SCHLOSSER, ATTORNEY AT LAW, P.C., on behalf of itself and all others similarly situated, and as assignee of EHOME CREDIT CORP., <br><br> Plaintiffs, <br><br> vs. <br><br> ST. PAUL FIRE AND MARINE INSURANCE COMPANY, <br><br> Defendant. | Case No. 03 C 8627 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In May 2002, plaintiff Bernard A. Schlosser, Attorney at Law, P.C. filed suit on behalf of a putative class against eHome Credit Corp. in state court in DuPage County, Illinois. Schlosser alleged that in April 2002, eHome, a mortgage broker, had sent an unsolicited advertisement to his facsimile machine, in violation of the federal Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, the Illinois Consumer Fraud Act, 815 ILCS 505/2, and the Illinois common law of conversion. eHome had allegedly contracted with another entity to sent 100,000 advertising faxes. Schlosser sued on behalf of all of those who had been sent advertising faxes without their consent or a prior business relationship with eHome.

In 2001, eHome purchased a commercial general liability policy from defendant St. Paul Fire and Marine Insurance Company, covering the period from June 21, 2001 through June 21, 2002, along with an umbrella excess liability policy for the same period. The policies provided a

2 (

total of $7 million in coverage. eHome was served with summons in the Schlosser case on or about June 21, 2002. On September 18, 2002, eHome gave St. Paul notice of the suit. On October 10, 2002, St. Paul sent eHome a letter denying coverage. In the letter, St. Paul stated that the TCPA claim did not constitute a "personal injury" or "advertising injury" claim within the scope of the CGL policy's general liability coverage; there was no claim in the Schlosser suit for bodily injury or property damage covered under the policy's general liability coverage; and the ICFA claim, which sought injunctive relief, restitution, penalties and attorney's fees, was not a claim for "damages" within the meaning of the policy and did not fall within the policy's terms in any event.

St. Paul did not elect to defend eHome under a reservation of rights, nor did it institute a declaratory judgment action seeking a declaration of non-coverage. eHome filed a declaratory judgment action in New York state court against St. Paul and Schlosser sometime prior to November 27, 2002. St. Paul was served with summons on November 27, 2002; Schlosser, as best as we can determine, was never served.

The TCPA provides for statutory damages of $500 per fax if the violation is not willful, and $1,500 if it is. Thus eHome's potential exposure in the Schlosser suit, if a class was certified, was somewhere between $50,000,000 and $150,000,000. eHome, represented by the law firm of Varga, Berger, Ledsky, Hayes & Casey (which is experienced in the defense of consumer lawsuits), negotiated a settlement with Schlosser. The settlement agreement, made in or about September 2003, provided for an assignment to the putative class of eHome's rights under any applicable insurance policies and payment by eHome of $20,000. The agreement provided that Schlosser would pursue, as assignee, a claim against St. Paul for the amounts

2

provided by the insurance policies, and that if Schlosser recovered, eHome would stipulate in the DuPage County case to certification of a settlement class consisting of all Illinois residents who received an advertising fax from eHome without express consent. If Schlosser did not recover from St. Paul, eHome would be given a release of all claims. In either event, judgment would not be entered until after the determination of the insurance coverage suit. A state court judge approved the settlement on October 9, 2003.

On October 13, 2003, Schlosser's counsel advised eHome's counsel that it was prepared to file suit against St. Paul in Illinois as the assignee of eHome's rights under the insurance policies, and it directed eHome to dismiss the New York action. Two days later, on October 15, 2003, Schlosser filed this action in state court in DuPage County seeking a declaration of coverage.

On some unknown date following the Illinois settlement and assignment, St. Paul filed a separate suit against eHome in New York state court, seeking a declaratory judgment of non-coverage. St. Paul advised eHome's New York counsel that it would not pursue its newly-filed case so long as eHome did not dismiss its own New York declaratory judgment action. Evidently eHome did not take the steps necessary to dismiss its earlier-filed case. On December 15, 2003, St. Paul filed a motion for summary judgment in eHome's New York case seeking a declaration of non-coverage. The motion is noticed for hearing on January 21, 2004, at which time a briefing schedule is likely to be set. As indicated earlier, Schlosser, though named as a defendant in the case, evidently has not been served with process.

On November 26, 2003, St. Paul removed the present action to this Court based on diversity of citizenship. On December 24, 2003, Schlosser filed a motion for summary judgment

on Count 1 of its complaint, in which it alleges that St. Paul breached the insurance policies by refusing to defend or indemnify eHome. On the same date, Schlosser also filed in present case a motion entitled "motion to enjoin St. Paul from interfering with *res* before the court," in which it sought to bar St. Paul from seeking a declaration of non-coverage from the New York state court. Both of Schlosser's motions are now fully briefed and ready for ruling.

**1.      Schlosser's motion for summary judgment**

The first question, and the one the Court finds to be dispositive of Schlosser's summary judgment motion, is that of choice of law. Schlosser cited both Illinois and New York law in its opening memorandum without discussion of which should apply. St. Paul cited New York law throughout its responsive memorandum but made no argument regarding why that state's law should apply. Schlosser's reply contains the only argument in the parties' papers on the choice of law issue, and that argument is confined to a footnote which largely relies on a single unpublished District Court decision. Though the question is not an easy one, the Court finds that New York law governs this action.

A federal court sitting in diversity applies the conflict of laws rules of the forum state, in this case Illinois. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). When, as in this case, an insurance policy lacks a choice of law provision, Illinois courts employ a "most significant contacts" test to determine the rights and responsibilities of parties to an insurance contract. *Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 166 Ill. 2d 520, 527, 655 N.E.2d 842, 845 (1995). "Absent an express choice of law, insurance policy provisions are generally governed by the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract,

4

the place of performance, or other place bearing a rational relationship to the general contract." *Id.* (quotation marks and citation omitted).

In this case, the factors set forth in *Lapham-Hickey* point in several different directions. The subject matter of the CGL policy – in other words, the risks insured – is located in the various states in which eHome operated, including Illinois. The policy was delivered to eHome at its headquarters in New York, which is also eHome's domicile. St. Paul's domicile is Minnesota. New York appears to be the place of the last act needed to give rise to a valid contract (eHome's acceptance of the policy). The "place of performance" is unclear. Several states, including Illinois, have some relationship to the general contract.

Schlosser argues that Illinois law should apply, relying on two factors: eHome has operations here, and the liability for which it seeks coverage arose here. As a general rule, "the location of the insured risk is given special emphasis." *Society of Mount Carmel v. National Ben Franklin Ins. Co. of Ill.*, 268 Ill. App. 3d 655, 664, 643 N.E.2d 1280, 1287 (1994) (citing Restatement (Second) of Conflict of Laws § 193 (1971)). But in the present situation, the insured risks were located in every state in which eHome did business, not just Illinois. In such circumstances, several decisions from other judges in this District appear to give controlling weight to the law of the state in which the claim arose that forms the basis of the coverage dispute, which in this case is Illinois. *See, e.g., Flodine v. State Farm Ins. Co.*, No. 99 C 7466, 2001 WL 1394977, at *3 (N.D. Ill. Mar. 19, 2003); *Western American Ins. Co. v. Moonlight Design, Inc.*, 95 F. Supp. 2d 838, 841-42 (N.D. Ill. 2000); *Evangelical Lutheran Church in America v. Atlantic Mut. Ins. Co.*, 973 F. Supp. 820, 823-24 (N.D. Ill. 1997); *American Builders & Contractors Supply Co. v. Home Ins. Co.*, No. 96 C 5041, 1997 WL 43017, at *2 n.5 (N.D. Ill.

5

Jan. 28, 1997).

The primary Illinois case on which the judges in each of these cases relied is *Society of Mount Carmel*, which was decided by the First District of the Illinois Appellate Court. *Society of Mount Carmel* concerned a liability insurance policy issued to a religious order headquartered in Illinois but with operations in several states. The order was sued in California on an employment-related claim, and it sought a declaratory judgment that the claim was covered by its insurance policy with the defendant. The Appellate Court concluded that California law applied to its determination of whether coverage existed. We quote the court's discussion in its entirety:

> As stated in the Restatement (Second) of Conflict of Laws § 193 (1971),
>
>> "The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local laws of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied."
>
> This section recognizes that the "location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally in a single state." (Restatement (Second) of Conflict of Laws § 193, comment b, at 611 (1971).) This is so even where the policy in question covers multiple risks located in several states, as is the case here. (*See Diamond State Insurance Co. v. Chester-Jensen Co.*, 243 Ill. App. 3d at 489-90, 183 Ill. Dec. at 446-47, 611 N.E.2d at 1094-95; *cf.* Restatement (Second) of Conflict of Laws § 193, comment f (policy insuring against risks located in different states treated as separate policies each insuring a separate risk)).
>
> Plaintiffs argue that the use of the most significant contacts test would result in the law of several jurisdictions being applied to the same policy in this instance as the policies in question cover risks located in several states. They urge, instead, that the place where the insurance contract was executed should exclusively control the choice of law. The use of such a test which looks exclusively to only one factor could easily lead to the application of the law of a forum which lacked any significant contact with the dispute in question. We rejected the proposed application of a similar bright-line test which also, in effect, advocated the application of the law of the insured's home state in *Diamond State*

*v. Chester-Jensen,* and see no persuasive reason to now adopt plaintiffs' unduly narrow test. 243 Ill. App. 3d at 489, 183 Ill. Dec. at 447, 611 N.E.2d at 1095.

Applying the most significant contacts analysis, we conclude that California law governs the interpretation of the policies in question. Although these policies were executed in Illinois, all other significant factors favor the application of California law. Most importantly, the insured risk involved in this instance, Crespi High School, was located in California. (*See* Restatement (Second) of Conflict of Laws § 193 (1971); *Allen v. State Farm Mutual Auto Insurance Co.* (1991), 214 Ill. App. 3d 729, 158 Ill. Dec. 261, 574 N.E.2d 55; *see also Diamond State Insurance Co. v. Chester-Jensen Co.,* 243 Ill. App. 3d at 489, 183 Ill. Dec. at 446-47, 611 N.E.2d at 1094-95; *International Surplus Lines Insurance Co. v. Pioneer Life Insurance Co.* (1990), 209 Ill. App. 3d 144, 154 Ill. Dec. 9, 568 N.E.2d 9.) Moreover, the underlying plaintiff was a California resident and the underlying action was brought in a California court against defendants who were predominately domiciled in California. (*See International Surplus Lines Insurance Co. v. Pioneer Life Insurance Co.,* 209 Ill. App. 3d at 154-55, 154 Ill. Dec. at 14, 568 N.E.2d at 14 (application of Arizona law deemed proper in action for punitive damages against an insured where the insured risk was located in Arizona and the insured was sued in Arizona); *Boise Cascade Home and Land Corp. v. Utilities, Inc.,* 127 Ill. App. 3d at 13, 82 Ill. Dec. at 187, 468 N.E.2d at 449; *see also Diamond State Insurance Co. v. Chester-Jensen Co.,* 243 Ill. App. 3d at 487, 183 Ill. Dec. at 446, 611 N.E.2d at 1094 (which in determining that the law of Illinois properly controlled, predicated its conclusion on the convergent facts that the policy was issued in Illinois, the insured risk was located in Illinois, that the underlying action was filed in Illinois courts, and that application of Illinois law was not contrary to Pennsylvania's public policy)).

*Society of Mount Carmel,* 268 Ill. App. 3d at 664-65, 643 N.E.2d at 1287.

Were the Court to follow these decisions, we would find that Illinois law governs the present case, as the claim for which coverage is sought arose in Illinois and has been litigated in an Illinois court. The Seventh Circuit, however, has gone in a different direction. In *Jupiter Aluminum Corp. v. Home Ins. Co.,* 225 F.3d 868 (7th Cir. 2000), the court, interpreting Illinois law, stated that the location-of-the-risk factor has little weight in the choice of law analysis when the insured risks are located in more than one state. *Id.* at 874. In this regard, the Seventh Circuit relied on *Employers Ins. of Wausau v. Ehlco Liquidating Trust,* 309 Ill. App. 3d 730, 723 N.E.2d 687 (1999), a decision by the First District of the Appellate Court regarding coverage of

7

insurance policies issued to an entity that had operations in over twenty states, with more locations in Illinois than in any other single state. The coverage dispute concerned a claim that arose in Arkansas. In the passage relied upon by the Seventh Circuit in *Jupiter*, the court stated that

> the location of the subject matter of the contract, such as the location of the risk insured by an insurance policy, is entitled to little weight when the subject matter or risk is located in more than one state. *See Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.*, 166 Ill. 2d 520, 527, 211 Ill. Dec. 459, 655 N.E.2d 842, 845 (1995); Restatement (Second) of Conflict of Laws § 193, Comment b, at 611-12 (1971) (while state where risk is located bears significant relationship to casualty insurance contract and will govern issues of contract validity and rights of the parties, risk must be located in one state; if contract covers a group of risks that are scattered throughout two or more states, location of risk is not given great weight).

*Id.* at 729, 723 N.E.2d at 694-95. The court went on to discuss how the Illinois Supreme Court had applied this approach in *Lapham-Hickey*:

> In determining the weight to be given the various contacts present in this case, we find the decision in *Lapham-Hickey*, 166 Ill. 2d 520, 211 Ill. Dec. 459, 655 N.E.2d 842, cited by Ehlco, to be instructive. In that case, the insured sought a declaration regarding its right to recover defense costs associated with EPA proceedings relative to Minnesota property insured under a policy issued by Protection Mutual Insurance Company. The court found that the insured was not entitled to recovery because no lawsuit had been filed. *Lapham-Hickey*, 166 Ill. 2d at 533, 211 Ill. Dec. 459, 655 N.E.2d at 848. Before reaching that conclusion, however, the court was required to determine whether Illinois or Minnesota substantive law governed the construction and interpretation of the all-risk insurance policy that covered property located in six states. The court chose Illinois law based on that state's contact with the insurance contract. Those contacts included the fact that the policy was delivered to Lapham-Hickey in Illinois, that Lapham-Hickey was incorporated in Illinois, and that Protection Mutual was licensed to do business in Illinois. The court gave little weight to the fact that the property was located in Minnesota because the policy covered property located in six states. Instead, the court chose to apply Illinois law "to obtain a consistent interpretation of the policy." *Lapham-Hickey*, 166 Ill. 2d at 527, 211 Ill. Dec. 459, 655 N.E.2d at 845.

*Id.* at 740, 723 N.E.2d at 695.

Having assessed these two apparently competing lines of Illinois authority, this Court

8

concludes, consistent with the Seventh Circuit's decision in *Jupiter*, that the fact that Schlosser's lawsuit against eHome was filed in Illinois should carry no significant weight in the "most significant contacts" analysis. When state law is unclear, our task is to determine how the Illinois Supreme Court would decide the point. Decisions of intermediate appellate courts are to be considered in this regard, but they are not dispositive. *See, e.g., Allstate Ins. Co. v. Menard's Inc.*, 285 F.3d 630, 636-37 (7th Cir. 2002). This Court believes that *Employers Ins. of Wausau* accurately marks the path that the Illinois Supreme Court would take. The Appellate Court's decision in *Society of Mount Carmel* preceded the Supreme Court's decision in *Lapham-Hickey* by nearly a year; one would not have expected the court to be able to predict with complete certainty how the Supreme Court would handle the choice of law issue in a case in which the insured risks were in multiple states. But once *Lapham-Hickey* was decided, the same First District of the Illinois Appellate Court (albeit a different Division of that District) changed its approach in *Employers Ins. of Wausau*. The latter case is faithful to the Illinois Supreme Court's treatment of the matter in *Lapham-Hickey*. Like the Seventh Circuit in *Jupiter*, this Court finds that *Employers Ins. of Wausau* accurately states Illinois law in this regard.

After consideration of the remaining factors set forth in *Lapham-Hickey*, this Court concludes that New York law governs the determination of the parties' rights and responsibilities under the insurance policies at issue. As the court suggested in that case, it does not make a great deal of sense to have the law governing eHome's insurance policies depend upon the particular place where it is sued in a particular case; rather, it makes more sense to have a consistent basis for interpreting its rights and responsibilities under the policies. *See Lapham-Hickey*, 166 Ill. 2d at 527, 655 N.E.2d at 845. The law of New York, where eHome is headquartered and has

9

operations, and where the insurance policies were delivered, is the law appropriately applied.

The next question is whether Schlosser can maintain this action. Under ordinary circumstances, an injured party is precluded from maintaining an action against an insured tortfeasor's insurer (a so-called "direct action") until after a judgment is entered against the tortfeasor. This is the general rule under both New York and Illinois law. *See, e.g., Richardson v. Economy Fire & Cas. Co.*, 109 Ill. 2d 41, 47, 485 N.E.2d 327, 329 (1985); *Mansul Constr. Corp. v. State Insur. Fund*, 118 A.D.2d 983, 984-85, 500 N.Y.S.2d 87, 88 (1986); *see generally, Vargas v. Boston Chicken, Inc.*, 269 F. Supp. 2d 92, 95-97 (E.D.N.Y. 2003). Schlosser, however, is an assignee of the insured tortfeasor and thus claims the right to be able to step into eHome's shoes. St. Paul contends that determination of its obligation to pay the face amount of the policy is inappropriate, as the policy only requires it to pay sums that eHome is "legally required to pay," and under the settlement the only amount eHome might be legally required to pay is $20,000. To support the maintenance of this action in view of the contingent nature of the settlement, Schlosser relies on *Guillen v. Potomac Inc. Co.*, 203 Ill. 2d 141, 785 N.E.2d 1 (2003), in which the Illinois Supreme Court dealt with a settlement similar to the one that Schlosser and eHome made in this case. The court held that because the insurer had wrongfully refused to defend the insured in the underlying litigation (as Schlosser claims St. Paul did with regard to eHome), it had forfeited the right to argue that the insured was not legally obligated to pay, or otherwise to object to the settlement on grounds other than reasonableness. *Id.* at 162-64, 785 N.E.2d at 13-14. But because New York law, not Illinois law, governs the determination of the parties' rights and responsibilities under eHome's insurance policies, *Guillen* is of no assistance to Schlosser. Schlosser has made no effort to address how New York law deals with this subject.

Under the circumstances, Schlosser is not entitled to summary judgment.

2. **Schlosser's motion to enjoin St. Paul from "interfering with the *res*"**

The Court believes that Schlosser's motion to enjoin St. Paul from "interfering with the *res*" is based on an erroneous premise: that St. Paul, having removed this case to federal court, is somehow estopped from proceeding in the still-pending case in which it was sued by eHome in New York. The Court assumes that both sides would agree that it makes little sense to have the selfsame coverage issues decided in two separate courts. And there is little doubt that each side is doing its utmost to have the dispute decided in its own "home court." But we see no authority for the proposition that St. Paul's mere removal of this case creates any sort of bar to proceeding in the New York case.

That said, there are certainly bases on which Schlosser could seek to have this Court make the definitive determination of this dispute (among other things, it is not entirely clear why eHome, irrespective of St. Paul's filing of the second New York case, did not follow Schlosser's direction to dismiss the case it had filed in that state; and if as Schlosser argues it is a necessary party to the coverage dispute but has not been served in New York, that court may be unable to make a decision that has a binding effect), or alternatively to step aside in favor of the earlier-filed New York case. Because there may be a basis on which Schlosser could seek to bar St. Paul from proceeding with the New York case, rather than denying its motion we will enter and continue it for a reasonable period so that the parties can determine their next moves.

### Conclusion

For the reasons stated above, the Court denies plaintiff's motion for summary judgment [docket # 9-1]. The status hearing set for January 21, 2004 is vacated and reset to January 29,

2004 at 9:30 a.m. Plaintiff's motion to enjoin St. Paul from interfering with the *res* before the Court [docket # 8-1] and its motion for interim restraining order [docket # 7-1] are entered and continued to that date.

                                                                                                    MATTHEW F. KENNELLY
                                                                                                   United States District Judge

Date: January 20, 2004